UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DIANNE DODD, o/b/o N. J. P., | No. ED CV 06-00414-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and certified Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed and the matter remanded for further hearing.

Plaintiff raises two issues: that the Administrative Law Judge ("ALJ") failed to develop the record, and failed to consider non-medical evidence.

At the hearing held on August 26, 2005 (AR 161-176), Plaintiff appeared without counsel.  Although the ALJ adequately advised Plaintiff of her right to be represented (see AR 164, et seq.), the colloquy between Plaintiff and the ALJ seems to indicate that Plaintiff wanted legal assistance. (See AR at 164.)  The ALJ offered to continue the hearing to permit Plaintiff to obtain representation, but moments later, declined to continue the matter any further. (See AR 165.)  As Plaintiff points out, the ALJ had offered to conduct further proceedings if she obtained counsel (see, id.).  Plaintiff did obtain counsel (the same counsel who now represents her in this action) on February 7, 2006 (AR 154-155), and her counsel requested a review of the hearing decision. (AR 8.)  Despite Plaintiff's claim that the ALJ's offer to reopen proceedings was reneged upon, there is nothing in the record to indicate that Plaintiff's counsel asked to reopen proceedings.  In and of itself, therefore, if the failure or refusal of the Commissioner to reopen proceedings is an issue in this litigation, it has no merit.

What is clear is that the record is seriously undeveloped, and what evidence is in the record is clearly insufficient to constitute substantial evidence to support the ALJ's decision.  Although the ALJ was obviously aware of and in fact summarized regulations which govern determination of disability in minors (see AR at 14-16), the balance of the ALJ's decision fairly ignores the relative dearth of evidence in the record.  Plaintiff's child, Norma Jean Pullen (hereinafter "Norma"), was born on June 18, 2002, and was thus three years old at

the time of the hearing. (AR 102.)[1]  It was asserted that she was disabled because of seizures. (AR 56.)  Her treating physician is Dr. Vo (AR 57), who first saw her on August 15, 2003 because of seizures. (AR 57.)  The file contains a "Seizure Questionnaire" (AR 88-90), which, curiously, is unsigned and undated. The frequency of seizures is stated to be "periodic," with the last four seizures being noted to have occurred on December 7, 2003, December 14, 2003, December 28, 2003, and January 27, 2004.  It is asserted that Norma loses consciousness, has convulsions, and that the seizures last 50 to 60 minutes. (AR 88.)  Plaintiff reiterated this testimony at the hearing (AR 167-168), adding that during the seizures, Norma sometimes loses control of her bowel or her bladder, and that the seizures last about 15 minutes. (AR 168.)  The discrepancy concerning the length of the seizures was not inquired into by the ALJ.

   The file contains progress notes of Dr. Vo for the period of June 24, 2002 through March 17, 2004. (AR 103-132.)  In addition, there are hospital records.  On December 11, 2003, Norma was admitted to the Community Hospital of San Bernardino for the reason of "new onset seizures." (AR 135-136.)  There are also two pages of hospital records for the same facility for the period of February 16, 2004, indicating an admission because of gastroenteritis and dehydration. (AR 133-134.) The Court notes that at the hearing, these hospitalizations were not discussed at all; rather, the only question posed by the ALJ concerned the last time that Norma was hospitalized. (AR 169-170.)  The Court

---

[1] Although Plaintiff asserts that Norma was born on August 15, 2003 (see JS at 3), and the ALJ also adopted this date (see AR at 16), the medical records indicate a date of birth of June 18, 2002. (See AR at 102.)  August 15, 2003 is the alleged onset date of disability. (See AR at 56.)

3

also finds it peculiar that in the portion of the ALJ's decision entitled "Evaluation of the Evidence and Rationale," there is no reference whatsoever to these two hospitalizations. It would appear that this documentation was before the ALJ at the time the decision was written, as the only notation concerning additional evidence submitted to the Appeals Council references treatment records ending February 2, 2006 from La Salle Medical Associates. (AR at 7.) After Plaintiff obtained counsel, he filed a Request for Review of Hearing Decision/Order, referencing this additional medical evidence. (See AR at 154-160.)

The procedures which the Commissioner must follow in determining the existence of a childhood disability are extensive and detailed. One of these regulations is 20 C.F.R. §416.926a(b), which is referenced by the ALJ in his decision. (See AR at 18-19.) It is clear that in order to perform the analysis required by this regulation, substantial information regarding the child's activities and abilities must be in the record. Despite that requirement, there is little or no medical evidence in the record pertinent to this determination, and the ALJ almost totally failed to elicit information from Plaintiff at the hearing concerning these matters. As a result, both the ALJ, and now the Commissioner in this action, rely on literal snippets of information in Dr. Vo's progress records to answer the important questions which the regulations require to be addressed. The Commissioner, unfortunately, misstates the record. For example, it is urged upon the Court that the ALJ in fact did ask Plaintiff questions as to whether Norma had been hospitalized in the past. (See JS at 9, citing AR at 169-170.) The actual question, however, was, "When was the last time that she was hospitalized, actually in there over night

as a bed patient? This year?" (AR at 169.) This abbreviated question, lacking any followup, failed to reveal the other hospitalizations which the Court notes were in the record, and which the ALJ apparently decided, in any event, to ignore. Further, the Commissioner asserts that Norma's seizure disorder was under control due to her prescribed medication of phenobarbital. (See JS at 10, citing AR 147-152, 169.) Indeed, even a microscopic search of Dr. Vo's records only reveals isolated expressions such as "under control" (see AR at 103, referencing an examination dated March 17, 2004). While the ALJ substantially discounted the credibility of the mother's assertions concerning Norma's seizure disorders (see AR at 19-20), the Commissioner specifically cites the mother's testimony at the hearing to support a medical conclusion that "Plaintiff's seizure disorder was under control due to her prescribed medication of phenobarbital" (JS at 10):

> "Q   Okay. Now, since she's been on that [phenobarbital], has that helped the seizures at all?
> 
> A   Yeah."

(AR at 169.)

While Plaintiff is certainly a caring mother, her ability to diagnose ailments is no greater than that of any other lay person. For example, immediately following Plaintiff's testimony that the phenobarbital has provided some help with regard to the seizures, she described the reason for Norma's hospitalization over a two-day period, which occurred several weeks before the hearing, as due to a cold. (AR 169-170.) Although the ALJ expressed some apparent surprise that a child would be hospitalized overnight (much less for two days)

for a cold (see AR at 170), that was the end of the matter, and no followup was done to obtain these records. Finally, despite the Commissioner's apparent willingness to accept the child's mother's diagnostic opinion that phenobarbital has effectively cured the seizures, no attention was paid to Plaintiff's testimony that in 2005, Norma had four seizures. (AR 168.)

As the Court has noted, the regulations governing determination of childhood disabilities are very specific and demanding. In order to make this determination, very detailed information must be considered by the decision-maker concerning, for example, the child's ability to function in a home or school setting, the nature and level of activities of which the child is capable, and a comparison of the child's functioning to the functioning of other children of similar age. (See 20 C.F.R. §416.924a.) The ALJ's questions of Plaintiff at the hearing were, to put it charitably, inadequate and insufficient. With regard to Norma's school functioning, the following is the only evidence in the record from the hearing:

"Q   Okay.  How does she get along in school?
A    Good."
(See AR at 171.)

The balance of questioning regarding Norma's functioning and abilities is equally brief and inconclusive. (See AR at 171-172.) Despite an almost total absence of competent evidence, the ALJ concluded that Norma's impairments caused her no limitations in the domains addressed by 20 C.F.R. §416.926a. (See AR at 19.) Not only is there a lack of substantial evidence to support these conclusions, but there is no competent evidence whatsoever.

6

Finally, the Court will briefly address Plaintiff's contention that the ALJ did not properly consider the non-medical evidence before him, specifically, the extensive statements at the hearing of Norma's grandmother (AR 173-175), who provided specific information to the ALJ that the phenobarbital, which supposedly controls Norma's seizures, may have caused serious side effects, as observed by the grandmother, who stated, "The medication have [sic] messed up her teeth." (AR 173.) Norma's grandmother also believed that Norma would have to be admitted to Loma Linda (presumably the medical center) to remove her teeth, or at least to clean the gums. (AR 174.) Despite an extensive colloquy between Norma's grandmother and the ALJ about these matters, no apparent followup was done. Query how the Commissioner can conclude that this medication controls the seizures, without attempting to properly evaluate whether evidence that the medication may be having serious side effects is or is not credible. The Court cannot take seriously the Commissioner's argument (see JS at 12) that the ALJ was free to ignore the grandmother's information because she was merely an "observer." This position flies in the face of the Commissioner's regulatory obligation to consider relevant information from a variety of sources. See 20 C.F.R. §416.924a(a).

This Court cannot recall another case in which a determination of disability was made in such an absence of competent evidence, and in contravention of the stringent requirements of controlling regulations. The Court cannot conceive how the disability issue in this case can be determined, at the least, without a neurological examination.

//
//

7

For the foregoing reasons, the decision of the Commissioner is reversed and this matter is remanded for a new hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: January 26, 2007

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE